My name is Celeste Cresswell of the law firm of Cabot, Chapman & Osmer. I represent the Defendant Appellant, TWC Administration LLC. Along with me is Michael Cabot of my firm, also representing the Defendant Appellant. Your Honors, we're asking the court to set aside the verdict in this case. This is an age discrimination case. We're asking the court to set aside the verdict because discriminatory intent was not proved. The plaintiff did not meet the high burden of showing that age, her age, was the but-for cause of her termination. The plaintiff was fired because she falsified a company record. It was a coaching document. Her job was to supervise and manage her subordinates, to coach them, to help them do their job better. She was supposed to meet with her subordinates and do this one-on-one and coach them to do a better job. Unfortunately, one of those sessions, she backdated the document. The document was supposed to have been executed, the session was supposed to have been executed the week before it was actually signed. When the employee, her subordinate, signed the document and dated it correctly, the date she signed it, Ms. Westmoreland instructed her subordinate to change the date on that document. Excuse me, Counselor. You can argue the case the way you want, but I just want to make sure. Are you giving us your side of the case before the jury? No, Your Honor. I want to focus on… But you do know what the burden is at this point, right? The jury verdict? Yes, Your Honor. And the issue here is there was no evidence sufficient to create an issue of material fact that the jury could decide. There was no evidence of discriminatory intent. Your Honor, I intend to focus on that lack of evidence as well as the error in the jury charge that allowed the jury, indicted the jury, encouraged the jury to sit as a super-personnel department and not decide whether Ms. Westmoreland would have been fired but for her age, but to consider whether she should have been fired because she made what she would consider. One mistake. She asked for a decision as to the level of discipline. So she wanted the jury to second-guess what the employer decided. And that's not what the law permits. She has to carry the high burden of proving that but for her age, she would not have been terminated. Your Honor, the trial court's questioning of witnesses throughout the trial reinforced the erroneous jury charge. Were you the trial lawyer? No, Your Honor. Well, so you're in the same position I am. You read the transcript, right? Yes, Your Honor. I read the transcript, and you certainly wrote a better brief on that issue. But the trial judge tried this case once before. He made comments. He interrupted. He critiqued both sides. And it seemed to me it showed impatience but not partiality. So for me, at least, that argument doesn't go anywhere. Your Honor, I do not intend to spend time on that. I thought you just told us you were, but go ahead. I apologize, Your Honor. No, I probably misunderstood you. I thought you were saying, and I'm not trying to, I'm trying to provide a little clarification for the discussion, but I thought the comments that the district court made don't seem to cross the line under any standard that we've had. But I thought your point was that those comments tended to focus on the adequacy of the reason given by the employer. This is a long-time employee, a good-performing employee, and this was one bad incident, which was then represented in the instructions asking the jury to find whether the reason was a legitimate reason. And it seems to me, of course, then the jury is trying whether the employer gave a good reason as opposed to whether the employer did it because of age. And the jury could well have concluded it was not a good reason for a long-term employee and then been misled into a verdict where the jury really should have focused on whether the reason for termination was her age. And I think that was your point on that, but it's not been made totally clear. Your Honor, that is exactly our point. The statements and the questioning by the judge are relevant in that they inform the judge's intent in giving the summary jury charge. And they reflect that the judge reinforced this erroneous notion that the jury should decide whether termination was the appropriate discipline or something else. So you're sort of coming in from the back door. It seemed to me you started out by saying there's no evidence. And I gather that it's undisputed the decision-maker here was Busquith, and it was approved by Newcomb and Knotts, and they signed off on it, and that was the end of the decision. And Busquith would have informed the plaintiff, but she was out of town or something, and so a former supervisor was asked to inform the defendant and did inform the defendant, and that's where the one statement was made that plaintiffs rely on. But I guess the challenge is, and really it's a question I would have for the other side, is where is the evidence that the decision-makers even thought about age, even considered it in any sense? And I didn't see it in the record, but I may be wrong. And that's what we're here for, argument. Yes, Your Honor. But that's what I thought you should be arguing. I mean, you're coming sort of in the back door and trying to attack the instruction and so forth, and you filed a motion notwithstanding the verdict, and you haven't laid it out. That is the primary issue, Your Honor, and let me try to lay that out in a better fashion. There was no – not only was there not evidence of bias on the part of the decision-maker, the plaintiff – Pardon me, Your Honor. There was no direct evidence of animus. That's correct. But do you think she made a prima facie case for age discrimination that allowed the shifting of burden in the McDonnell-Douglas scheme? No. You don't think she made that? No, Your Honor, because of – Which prong of that did she not reach? Adequate performance in that – Well, that's a question, isn't it? Didn't she testify that it was not in a deliberate type – what was her testimony? I thought that was – I thought the employer had given that up. There wasn't a claim. There were about 14 times in the record where various witnesses said, no, there's no claim that she was fired for an inadequate performance. That is not the focus of our appeal. Well, I thought you just said in the answer to Judge Gregory, you said, what element didn't you prove? And you said inadequate performance. I don't think she could prove adequate performance, but that is not our argument. Our argument is – So then you concede, then, she reaches the prima facie case, correct? I concede, Your Honor, that at trial, that was exactly what happened, that the case was tried with respect to whether the plaintiff had proved pretext, assuming that a prima facie case had been proven. Okay, so you're assuming that it was. Yes, Your Honor. All right. And what you're saying is that you came up with a nondiscriminatory reason, correct? That's right, Your Honor. Now, and I think – I did. And you did, you think, which is that you did something wrong, like changing the date that you supposedly did the session, correct? That's the conduct that's at issue. That's the conduct the plaintiff has admitted. The plaintiff has never denied changing the date. But if someone – if the jury believed that that's not true, that she didn't do that, why wouldn't that be evidence in terms of pretext? It's not – That's why I see – you're framing it as legitimate means as long as what we said, the reason that we gave for firing you, which we have a policy that says if you misrepresent something, we can fire you. That's not the end of the story. The question becomes, is it true that the person did that? And wasn't there contradictory evidence in terms of whether or not, in fact, she was guilty of that before the jury? Your Honor – Was it not? The – I'm asking you a specific question. Didn't she testify that that was not the case that you lay out? She testified that – she admitted that she changed the date on the document. Did she testify that she didn't do it intentionally and that she had the meeting on the day that she claims? Yes, she did, Your Honor. And could the jury believe that? The jury could believe that, but it's not material. Why is it not material? The decision-maker's perception is not material. Do you understand what the burden is in this case? The question – your answer isn't whether – if the jury disbelieved that and found that to be a pretext, then the plaintiff still has the burden to come forward with evidence that there was discrimination even after making that finding. And your argument is there was no evidence of discrimination based on age by the decision-makers. And I – you know, it's not hard, but you're making it hard. Your Honor, with respect to the Reeves case that the plaintiff has cited, I think it's helpful to think about that case. It's sort of an important case, right? It is, Your Honor. It got rid of pretext plus, which we thought was the standard in the Fourth Circuit. It specifically got rid of that. And I noticed below, and still here, you don't cite our cases – you cite our cases that are pre-Reeves. And we are both, though – we are understanding that Reeves is the law of the land, right? Yes, Your Honor. Okay. And I think Reeves, comparing it to the Holland case from this court, is a helpful comparison. The question was whether the employee had cast doubt on the decision-maker's perception. So in Reeves, they cast a doubt on whether the supervisor could have believed the misconduct occurred. The employee was accused of not reporting a subordinate's absence from work. But the employee put in evidence that he was not at work on the day. He was in the hospital the day that employee didn't report for work. Now, that is in contrast to, in the Holland case, the employee was fired because the decision-maker believed he had threatened another employee. And the plaintiff's evidence didn't cast any doubt on whether the employer, the decision-maker, believed that the employee had threatened another employee. And that's the same thing here. Well, here, the employer says he fired this young – this woman, not young – this woman because she did – she whited out something on a form, right? Yes, Your Honor. That's what he said. And so, of course, we defer to employers' judgment about how they run their company. But we can certainly – it's certainly within the jury's province to sign that the reason given was not credible and, instead, it was sex discrimination. That is – that's the law. That's what juries do. And apparently, that's what they did here. Your Honor – But they took the fact that she did this. They didn't think that this was the reason that the employer fired her. But, instead, the reason was that here is a 30-year employee with a virtually impeccable record and that, instead of it being the reason that the employer gave, this one slip-up, it was, in fact, that they wanted to get rid of old people. Your Honor, there was never any doubt cast, though, on the decision-maker's perception. Ms. Westmoreland admitted that she changed the date on the lawsuit. I understand she admitted that. Everybody admits she did that. The question is why. Why did the employer fire her after she did that? And the question, though, Your Honor – And she put to it that it was because of sex discrimination – because of race – because of age discrimination. So many discriminations. But none in it. We're just focusing on age discrimination. And your people said, no, we have this legitimate reason. But the jury was entitled to look at the truth or not of the reason that the employer gave. Not whether it's a good reason or not. Right. But whether it's truthful or not. But that evidence, the plaintiff has to have evidence that shows it was the but-for reason. But she has circumstantial evidence. The evidence is she's there 30 years. She's had two mishaps that she doesn't know. Maybe you don't believe her testimony. But could somebody believe her testimony? I don't think I've sat in 25 years on a Fourth Circuit case where we've reversed a jury verdict. It is a high standard. But so is the standard for proving but-for her age she would have been terminated. And I think that's where the issue lies. Okay. Thank you. Thank you. Thank you, counsel. Mr. Combs. Thank you, Your Honor. My name is Todd Combs. I'm an attorney from Mooresville, North Carolina. I'd first like to start by, you know, we had three issues before the court. The jury evidence. The instructions. And then there was an issue about if it's the judge's fault, question the witnesses. You know, the judge's role is justice. So it was interesting to have to go back to case law from, you know, 50, 100 years ago to pull that. The judge's role is to follow the law and interpret it. Is that right? Yes, Your Honor. Okay. All right. Those are the reasons why you might have some follow-up questions for the witnesses. I think it's interesting to note on the first trial we had, that was a week before Christmas of 17. And that was a hung jury. And then there were some theories by the appeals attorneys as to why. But the interesting thing was at the time it went over my head. But, you know, we had a good trial judge that's highly respected, and he's a good judge. But he had to ask at one point in time for the defense counsel to move on because he kept on, the lady kept on asking questions to the juror. And he was like, everybody knows you're going to keep that juror. Move on. So he's like, we don't want to have this, you know, trying a case before you try a case kind of situation. Let me ask you, the decision makers were Busguth, Newcomb, and Knotts, right? Busguth made the decision to fire her and gave the reason that she wasn't trustworthy because of the changing of the, conceded changing of the date. And she sought approval from Newcomb, and Newcomb signed off and got approval from Knotts. Yeah. Isn't that, just stick with me. I have a few questions here. Is that so, sir? Yes, Your Honor. All right. Now, is there any evidence, one iota of evidence, any inference that those three persons considered age of the employee in making their decision? Did they say it orally? No. Any evidence of those three in the record? Well, I think that when Budsbee first went to ask Glenda about the form, she didn't ask for the form. She asked for her file, and she looked through that file, and then she must have seen this one-on-one document, but it didn't say anything. It didn't do anything. And then, because Glenda didn't know why she was looking in this file, and then she left at a later time unbeknownst to Glenda, somebody went back in her file and stole the one-on-one form. Apparently, it was Budsbee. Then she went back and took this form to Newcomb, and then that's when they ambushed her. They didn't take the form in for that meeting. This form wasn't here. When Glenda had that meeting with Newcomb and with Budsbee, she didn't know what the heck they were talking about. The first time Glenda knew what they were talking about was at the termination, but Carraway, her semi-supervisor, Carraway, called the meeting. Budsbee was up in Virginia, called the meeting, terminated her, told her why. Let me ask you, I'm going back to the decision-making, the decision-makers. And the question is, is there any evidence, point to me any evidence in the record. We've looked at it and could find none. Evidence in the record that age was even on the table, considered or recognized or acknowledged by either Busquith, Newcomb, or Knotts. Well, Keneson, Keneson. Use the last name, who? The lady who, the 30-something-year-old lady who took Glenda's position. No, no, I'm talking about the decision to terminate Westmoreland. Well, there was, in the Newcomb report, the Newcomb report says Keneson, the one that got her job in her 30s, was the one that told Budsbee about the issue with the one-on-one. And that's in the Newcomb report. That was an incorrect report. Later on, after the defense lawyers got involved in it, they reshuffled it around, and then Newcomb, even in the trial, said, oh, that was a mistake. And I asked her, well, did you correct the mistake? Did you all do anything to correct that? No, no, it stayed false. So how is that anything to do with age? Well, Keneson's in her 30s, and she's Jones. Did anybody consider it, acknowledge it? I mean, the fact is everything focused on whether that was legitimate, that form. And when the explanation came out, both Ms. Westmoreland and her subordinate acknowledged that that was changed. She needed the date in the prior week because she hadn't cleaned out the form, and there were two dates misrepresented. One, the employees was whited out and changed, and then she put her own date on, which was a wrong date. But that's not an issue. That doesn't relate to age. That relates to whether she misstated that form. I'm asking you just any evidence that you have that those persons who made that decision considered age. Well, Cheryl was a substantially younger employee. She also signed the same form, and she wasn't even given any oral record. I gather the answer is you don't have anything except there happens to be the real world fact that she happened to be older, but not that the decision was made on that basis or even considered that basis. Your Honor, with smart companies, most of the time they're going to be circumstantial evidence. You may have an explanation, but you have to acknowledge one way or the other whether there was evidence of any kind by those decision makers. Well, Carraway was the one that actually fired, and she was the one that gave the order. She wasn't the one that actually fired. She communicated it to her. She was asked to pass the message. She did not participate, and the record shows that, in the decision to fire her. I understand. She signed the form as her superior, but then the comment about, you know, She didn't make the decision, did she? Well, she said she did not. Was the jury entitled to believe or not believe her? She also said she didn't know that Glenda had grandbabies. She said that on the record, and she couldn't get out of that in the second trial because she was not deposed. So, giving you that statement, I'm focusing on something. I'm having a hard time. I gather you don't want to acknowledge, but I think the truth of the matter is I could not find, and I'm wondering whether I overlooked something, I could not find any evidence that the decision makers considered age, discussed age, had a passing comment about age. This was an employee who conceitedly was there for a long time. She did a good job, but she was dishonest. And that's why they fired her. At least that's what they said. Now the jury is entitled to disbelieve that and say that's just a pretext. But the law still requires that you carry the ultimate burden of showing some evidence of age discrimination. Right. That's why I have a whole list. I can give a whole list, Your Honor, of everything that's suspicious about this and how it all in the totality of the situation. That's why no jury was going to rule against this deal, and that's why the second jury found a reasonable verdict. That was a really smart jury, too. It was, I think, the smartest jury I've ever seen. Half of them were financial advisors in Charlotte, and we had an accountant. We had an accountant that was so honest that she didn't realize it was Tom Warner at the get-go, and then at the end of that first day. Counsel, you don't have to do an announcement for us. Vinda had been there since 1985. I was in high school when she started. Six companies before in the cable business had an untarnished record, and her integrity had never been questioned in 30 years and two months. Well, you don't deny she changed it. She admitted it. Well, no, absolutely. And our sub-employee admitted it. Now, it's totally disingenuous to argue that that didn't occur. She whited it out. You can look at the page at the light. They looked at it. She whited it out, but she conceded it. The employee testified, and there's no contrary evidence. Oh, no, Your Honor. That's absolutely true, but it was not a dishonest act. It was done for the fact that she wanted the – It's not a dishonest act? No, Your Honor. It was to reflect the date the one-on-one occurred. The date that the one-on-one occurred occurred the previous Tuesday. She wanted that to reflect that. That's why the date on the top is 7-21-15. She changed it to make it accurate. She changed it to make it accurate, Your Honor. That's the evidence. She got snowstormed by the people. They didn't present this to her. She didn't know what they were talking about. The only time that – apparently, the only time that they were examining her, the next time was when they showed it to her when Carraway fired her. She didn't know what they were really talking about. And the juror believed her that she didn't do it dishonestly, that she did it for correct – make a clerical right like we do in the court. The court can make clerical corrections in its judgment. It wasn't done dishonestly, but you corrected. That's what her evidence was, and the juror believed it, correct? Yes, Your Honor. Because they couldn't believe that somebody working 30 years with an impeccable record would be fired like that. Was she offered the opportunity to resign? No, Your Honor. Right, or to retire? No, Your Honor. Right, the jury probably just couldn't believe that. But they didn't – they admit that they did not even go back to the records and check to verify that Cheryl and Glenda worked that same day. Most likely, you know, they did work the same day. They didn't even go back and say, well, you know, because Glenda's saying that they did the one-on-one that Tuesday. She wanted the record to reflect. I can post a check on one of my trust account checks or my BO checks, but, I mean, that doesn't mean I'm going to get this barred from the bar by doing a different date. I mean, it doesn't verify that the date I'm signing it. There's not a certification saying that you're certifying that this is the date that it is. It's just the meeting date. So she put the meeting date. Nobody questioned the meeting date at the top. That was always 7-21-15. That was the Tuesday before, and this was on the following Monday. So when Glenda gave it to Cheryl to sign, Cheryl just handed it back and had the previous date. I think it was 7-27-15, and she just – to make this reflect the date that the meeting happened, because at the top it says 7-21-15, and then Cheryl wrote in 7-27-15, and so they – Why did Cheryl think it was wrong? She thought it was wrong, and she reported it, and she said she didn't feel good about changing dates. Well, that's an issue of fact on whether Cheryl reported it. I'm asking you what the evidence showed. She thought it was dishonest, didn't she, Cheryl? She says that she didn't recall having the one-on-one on Tuesday at a later date, after they had already made the decision to fire Glenda. But she never got written up. If she thought she was being dishonest, why didn't she get written up? I mean, let alone fired. I didn't ask you that question. I asked you, didn't she testify that she thought it was wrong? She thought it was wrong. You know the evidence in the record, right? Yes, Your Honor. Okay. She testified that she reported it because she thought it was wrong. Well, she thought it was wrong. I guess she thought that – it just says the word date. I guess she thought that it's supposed to be the day of today and no other date, because she didn't say that was wrong at the top when it says meeting date, 7-21-2015. If she thought it was wrong, then she's the one that's really lying. Glenda was doing it just to reflect the date that the meeting occurred. Well, the reason that she thought it was wrong was because, as you said a few minutes ago, she thought the meeting had not occurred on the date that was inserted. The jury was entitled to believe one of the witnesses over the other on that, right? Yes, Your Honor. Yes, ma'am. Okay. Do you have something further, counsel? Yes, Your Honor. Okay. Just on other issues, the judge was like – he was fair. They had every opportunity on the planet, and then everything – it was good to have it at the EEOC level without that, because they try to back in the performance issues, and then at the second trial, most of the exhibits were having to do about the one-on-ones in the previous whole year, and that was like – it didn't have anything to do with it. They admitted at least ten times on several of my depositions and in the testimony at trial that she was a good employee. She always was, and there was never an issue of that. She was replaced by a Kenison who had been gunning for that job, who Glenda had trained that lady. She only had two years' experience. It took Glenda's position, and for a stellar 30-year history, she will always be branded as being terminated from corporate America for fraud, and that will never change in her whole life. And they replaced somebody younger and did all those activities and said, hey, now you can go home and take care of your grandbabies. And she – in trials, they said she didn't know that she had grandbabies. And then when I held her to the fire on trying to – when I held her to the fire and said, well, you deny and you say it, she would not deny that she said that. She wouldn't admit it or wouldn't deny it. So not denying it, that made it worse. And then I tried to keep on asking questions, and the judge, he wanted me to move on. So I moved on with that and didn't go further with that on Caraway. But the unique thing about the trials is going into the first trial, we had seven witnesses, but only four were deposed. So the interesting thing about the February trial was that then you had all seven tied up to what they said the week before Christmas. So I always thought it would be a nightmare having a second jury trial, but it was actually – it moved smoother because you got – it was like having all the witnesses. You know what they had to say on their stories, and it actually went faster. So – but it was a fair trial. They had every opportunity. And, you know, I represented, you know, Glenda at both trials, and ever since we filed the lawsuit about three years ago. But it is important to have, you know, that kind of – you know, 90% of the people can't stay at a job more than two years. So it's really special to have somebody who comes in, you know, who's been there 30, 20 years. But, you know, human nature, you don't think about how long ago that was. You know, that was when – Let me ask you, didn't Ms. Westmoreland concede that she didn't have the interview the prior week? Her testimony was, quote, I freaked out. I panicked because you were coming. I didn't get my work done, so I had Jennifer change it because I didn't get to it more than once last week. That's when she was – That's when – That's when she was confronted without knowing what document they were talking about in specific. She wasn't admitting that she was lying or anything like that. She was just – at the same meeting, Janet Butsby was saying, oh, you're okay, it's okay, I'm just going to be a tap on the back. It's going to be a tap on the back. Okay, but I think that's a question worth trying to answer. Why don't you try to answer it? In other words, in testifying there, was she testifying that she had not had the conference? Was she testifying – didn't she have three employees that she was supposed to interview? Was she testifying she hadn't had the conference with the other two? Or was she testifying that she had had the conference with the one, but that she hadn't written it up? So what does that testimony mean? Okay, here it goes back, because actually the lawyers involved, and it was in the fall of 2017 when I got on board on it because it was the lawyers trying to work all those one-on-ones. Nobody had ever been written up for not doing their one-on-ones, but it was common for them not to do these one-on-ones. Yeah, so I don't think all three of them had been done, but she specifically remembered doing this one, and that's why she was wanting to present at least something to Butsby, and that's why she was doing this. But they didn't present this to her at that meeting. I understand that. But in response to Judge Niemeyer's question then, it's your argument to us, I guess, that she knew she hadn't completed the other two one-on-ones. I don't think the other two were completed. That's what I just said. I'm sorry, what's the question? Hadn't completed, had not completed the other two one-on-ones, but what about this one-on-one? She did this one. That's why she was doing this forum, Your Honor. That's why she typed it up. She typed up the date, 7-21-15, which nobody questioned. The defense never questioned it. Both of them signed it. Cheryl wasn't even – nothing happened to her, and then they're saying, well, she was the one that had the mens rea on the signing it because she's thinking she's the only one that thinks she did anything wrong. Glenda never had any kind of mens rea on that, but, I mean, you get into a whole different ball of wax on what's going on here, but the whole point was everything, suspicious, suspicious, suspicious, everything added up to that's why the jury is going to fine for the plaintiff, like they did in this case, Your Honor. You know, it's the totality of the evidence. You know, the whole thing about, you know, blaming the judge, that kind of just dumbfounded me. When I got it, I told my apparel, when we got the defense brief in the spring of 18, you know, motion notwithstanding the judgment, I just told my apparel, I said, you know, they, corporate America, they're going to argue that the sky is not blue if they get paid enough to do it. It's unbelievable. So I just – I didn't even know what to say then. I was just thinking, like, oh, my gosh, because it's, you know, he's a good judge. He's a good trial judge and, you know, had solid jury instructions and had every benefit of the opportunity. But, you know, it's just human nature. You can't blame yourself, and you can't blame the first jury, and you can't blame the second jury. It's got to be somebody. So that was part of the appeal on it, and that's what we got. But, you know, the plaintiff is supposed to have every inference of, you know, all credibility issues assumed in the plaintiff's favor, no credibility issues assumed in defendant's favor, all reasonable inference assumed in plaintiff's favor, none in plaintiff's favor. But it's a difference to have somebody with a 30-year tenure too, and that makes no performance issues and replaced by younger. And you do have age comments, and they've been denied, and issue of jury determines what those issues – In fact, that's their proper providence. My light came on. I see it too. You finished? You finished? I think I have to be. And not to ask permission to go on. Do you want to go on further? Not unless you have any other questions, Your Honor. No, we don't. And your light is red. Thank you. Thank you. Thank you, Your Honor. I want to start with some of the last questions that were asked with respect to what the plaintiff testified, what the plaintiff admitted. Her testimony at trial, she admitted she didn't do anything wrong except using whiteout to change the date on the document, which is an admission that using whiteout to change the date on the document was, in fact, misconduct, and the very misconduct for which she was terminated. Is misconduct correct to make it reflect what the fact is? That's not what she testified. That's what you just said. She testified that it was wrong to do that, Your Honor, which is a reflection of this. I thought she testified she didn't know that using whiteout was wrong. I mean, I guess I can find the JA reference for you, but I'm pretty sure I read that. Yeah. I think that her testimony suggests she understood it was wrong to use whiteout to change the date on the document, and that was always the consistent reason that was given for her termination. But she testified she didn't – that nobody told her you couldn't use whiteout. I just want to be sure you and I are on the same page before I get the JA to worry about it. She did testify. She did testify. She didn't think it was wrong. She didn't know it was wrong. That nobody told her she couldn't use whiteout, but you obviously cannot falsify a company record changing a date. You mean to tell me that if – okay. So you're saying that if I did it on Thursday the 7th, but I wrote down it was Thursday the 6th, I can't put – change 6 to 7? That's wrong? The context of the statement that it was wrong is – No, I'm just asking you. Now, I'm talking about common sense. I mean, your client is corporate America. I mean, whatever it is, you're a corporate business. You mean to tell me that's wrong? If it really was the 7th, but I wrote the 6th, if I whiteout and put 7 there, I can get fired for that even though I really did do it on the 7th? If that's what the decision-maker understood and believed, then that's what's important. It's undisputed that the date was changed. But the jurors thought otherwise. See, that's where you're no longer king or queen anymore. It's put before a jury of their peers to look at the evidence. And they didn't believe you. They didn't believe your client. They didn't believe that they did this just because you changed the date trying to correct it with whiteout to the right date that I did it on. I guess they have some idea, like, I just can't believe that that happens with any reason other than age discrimination to somebody that's been there 30 years. That's the second part of the high burden. The plaintiff can't prevail just by proving falsity of the proffered reason. They also have to prove, but for age, she would not have been terminated. And there was no evidence on that front. But I don't think you – it's a question whether or not you prove that she's had any violation. There's any violation. If you're saying the only violation is, even if it's true that it happened on the 7th, but the mere fact that you changed it to the correct date, that's not even a question whether or not that's a legitimate violation. Yes, Your Honor. It is. It's a legitimate non-discriminatory reason to, as a matter of law we submit, for an employer to terminate someone if they believe they have changed and falsified a company record. You're doing exactly what the trial judge did, is to argue the justification of the reasons for termination. And it seems to me if it was a bad business decision or if it was a mistake, if it was unjustified, all of those don't make a bit of difference. Under the Supreme Court jurisprudence, there has to be evidence of discrimination based on age. And you have not focused on that in one sentence. I keep trying to pull it out of you, but there was no discussion of age. There was no inference of age. There was no suggestion that she's too old, she can't do her job. The idea was, did she falsify that? And they believed she did. According to them, she complained that she was behind on those forms and she changed the form. And while she was a good employee, she was not trustworthy because of that. That was their reason. Whether that's right or wrong, that's not what's on trial. What's on trial is whether the reason actually was because she was in the protected age. Yes, Your Honor. And you have not made one statement to the Court yet on that. Your Honor, none of the purported evidence goes to that issue that the plaintiff has cited in response to your question. Is it your theory that there has to be direct evidence of age discrimination? You have to have some employer saying, I don't like old people, I want to get rid of old people? No, Your Honor. And often there isn't direct evidence, right? Certainly, but there has to be some evidence. Some evidence. And if somebody has worked with 30 years with a flawless record and then is fired for a reason that she believes was just correcting a record, would somebody be – would a jury be entitled to deduce from that that, in fact, the real reason – they didn't believe the employer's reason – the real reason was age discrimination? No, Your Honor. Why not? Because the belief that matters is the decision-maker's belief. It's not evidence. But they don't believe the decision-makers, what the decision-makers said. It's not that they're getting in the middle of the employment. You see, you keep talking about this being some sort of business judgment in the employer. They don't think that. They just don't believe that this was the reason. They're entitled to believe, just like every other witness, entitled to believe the testimony or not. So then they're looking for a reason why they let her go. And the reason – the obvious reason seems to be that she's old. Your Honor, what the district court found was that a superior made a stray remark. Right. And that's colorable. That sort of adds whatever. And Ms. Westmoreland had worked there a long time and had a good performance record. Those – all of those facts, putting aside the superior statement, it doesn't – the notion that she had a long tenure and had had a good performance record, that's part of the prima facie. And the employer put a reason up for firing her that the jury did not believe. Your Honor, the performance – the performance and the tenure are part of the prima facie case. Right. The prima facie case, in and of itself, is not enough to get to the jury. Well, that's not – the Supreme Court has told us that it can be, actually. It can be under reach. Right. But Reeves has a second part. The second part is you have to cast doubt on the reason that's proffered. That's where the court failed here. Right. They did cast a whole lot of doubt. And they felt, for good reason, they cast a doubt. You know, the problem we have is that I think, you know, counsel was saying in terms of – about the jury and that, but, you know, I've tried a lot of jury trials. I think most people try to be fair and try to understand the law. But I think people may find it just difficult to put credibility then when the evidence, it seems, the reasons given is so far from fairness. And that is in the sense that people say, well, maybe there was one because she was older. But here it was just so thin that she changed a whiteout. She whiteouted something to correct the date. And then you fire her after 30 years. You don't give her a chance to resign, to retire. They just didn't believe that that was the reason. That the reason was that she was older. She trained the lady, other lady, for two years. And that's all the circumstance, not just direct, but after she trained her. And then there was evidence about some form there was, and counsel was trying to talk about that a little bit about it, and then said, no, that form had nothing to do with it. And you put all those circumstances together and this thin reason of a whiteout, the jury just said, I just can't believe you would treat a human being like that, other than unless there's something that violates Title VII. That's age discrimination. And the jury was entitled to do that under this evidence. I still think there is a second part to that that the jury has to find. It's not just, even if the plaintiff caused the jury to disbelieve the reason that was given, they also have to believe the real reason was age discrimination. And there is zero evidence on that point. In fact, Ms. Woodsmoreland testified that she could point to no statement that showed any age bias on the part of Busgett, Newcomb, Knox, none of those people who made the decision, who were involved in the decision making, none of them. So basically what you're saying is she was an at-will employee, correct? That's right, Your Honor. So you're saying they could have just walked in and said, you know, the sky is blue, you're fired. And that's all she had. You're saying there's no way a jury could find that. Just said, you know, I just don't like you anymore. Not because you're old or because you're a woman or because you're a person of color. I just don't like you anymore. And you would say that then the jury could never say that that was based on a prohibited reason. That's right. Not in an age discrimination case. That's a hypothetical. Not in an age discrimination case? Not in an age discrimination case. You hired somebody 30 years old to replace her. She's been there 30 years, almost impeccable record. They couldn't believe that. I think that what this court said in the Burbeck case is helpful in this context. In that the court said statements about age may well not carry the same animus as those about race or gender. Unlike race or gender differences, age does not create a true we-they situation. Barring unfortunate events, everyone will enter the protected age group at some point in their lives. Ms. Busguth was also in the protected category. Ms. Carraway was essentially the same age as the plaintiff. Age discrimination cases are different than Title VII cases. There is a higher burden the plaintiff has to prove, and the plaintiff didn't meet that burden in this case. And that was-that lack of evidence was compounded by the judge's jury instruction, which unfortunately I haven't talked about, but the jury instruction was erroneous, and it allowed the jury to find whether there was a legitimate business reason, and if there was no legitimate business reason, to find in favor of the plaintiff. Period. End of story. That is a legal error, and the jury could not find for the plaintiff if they found that there was no legitimate business reason. Only if they disbelieved the reason given and there was evidence that age bias was the but-for cause of the termination. Thank you, Your Honor. Thank you so much. We'll come down to Greek counsel and proceed to the next case.
judges: Roger L. Gregory, Paul V. Niemeyer, Diana Gribbon Motz